IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND

| | |
|---|---|
| **CORNELL BROWN AS PERSONAL REPRESENTATIVE FOR THE ESTATE OF VIRGINIA BROWN,**<br><br>　　Plaintiff,<br><br>vs.<br><br>**RUSHMORE LOAN MANAGEMENT SERVICES LLC**<br><br>　　Defendant. | Case No. 8:18-cv-00656-GJH |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S
<u>MOTION FOR SUMMARY JUDGMENT</u>**

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ................................................................................................... 1

II.     STATEMENT OF UNDISPUTED MATERIAL FACTS .................................... 2

      A.     The Loan ...................................................................................................... 2

      B.     June 2015 Loss Mitigation Application ...................................................... 2

           i.     The Initial Missing Documents ....................................................... 2

           ii.    The Remaining Missing Documents ............................................... 3

      C.     August 2015 Loss Mitigation Application ................................................. 4

      D.     October 2015 Loss Mitigation Application ................................................ 4

           i.     The Initial Missing Documents ....................................................... 4

           ii.    The Completed Application ......................**Error! Bookmark not defined.**

      E.     The Foreclosure Action ............................................................................. 4

III.    PROCEDURAL HISTORY .................................................................................... 5

IV.     LEGAL STANDARD ............................................................................................ 5

V.      ARGUMENT .......................................................................................................... 6

      A.     Rushmore Complied with RESPA by Never Obtaining a Foreclosure Judgment, Order of Sale, or Conducting a Foreclosure Sale. ............................... 7

      B.     12 C.F.R. § 1024.41(g) Does Not Prohibit a Mortgage Servicer from Initiating Foreclosure Proceedings. .................................................................... 8

VI.     CONCLUSION ..................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agomuoh v. PNC Fin. Servs. Grp.*,
   No. GJH-16-1939, 2017 WL 657428 (D. Md. Feb. 16, 2017) ...................................................6

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)...................................................................................................................6

*Blackstone v. Sharma*,
   191 A.3d 1188 (Md. 2018) .........................................................................................................5

*Bouchat v. Balt. Ravens Football Club, Inc.*,
   346 F.3d 514 (4th Cir. 2003) .....................................................................................................6

*Brown v. Select Portfolio Servicing, Inc.*
   No. GJH-18-1664, 2019 WL 1958547 (D. Md. May 2, 2019)...........................................1, 2, 7

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)...................................................................................................................6

*Farber v. Brock & Scott, LLC*,
   No. CV WGC-16-117, 2017 WL 4347826 (D. Md. Sept. 29, 2017)..........................................6

*Green-Wright v. JPMorgan Chase Bank, N.A.*,
   No. CV ELH-17-3199, 2018 WL 3756714 (D. Md. Aug. 7, 2018) ...........................................8

*Suazo v. U.S. Bank Trust, NA*,
   No. RDB-18-1451, 2019 WL 4673450 (D. Md. Sept. 25, 2019) ..............................................5

*Weisheit v. Rosenberg & Assocs., LLC*,
   No. CV JKB-17-0823, 2017 WL 5478355 (D. Md. Nov. 15, 2017) .....................................6, 8

**Statutes**

12 C.F.R. § 1024.41(f) .....................................................................................................................1

12 C.F.R. § 1024.41(g) ............................................................................................1, 2, 6, 7, 8, 9

**Other Authorities**

Fed. R. Civ. P. 56..........................................................................................................................1, 6

# TABLE OF EXHIBITS

| Exhibit | Description |
|---|---|
| 1 | Declaration of Kerry Walthall |
| A | Deed of Trust |
| B | Promissory Note |
| C | Notice of Servicing Transfer |
| D | June 2015 RMA |
| E | June 12, 2015 Correspondence to Brown |
| F | June 26, 2015 Correspondence from Brown |
| G | Contemporaneous Notes |
| H | July 2, 2015 Correspondence to Brown |
| I | August 26, 2015 Correspondence to Brown |
| J | August 19, 2015 Correspondence to Brown |
| K | September 14, 2015 Correspondence to Brown |
| L | October 2015 RMA |
| M | October 27, 2015 Correspondence to Brown |
| N | November 9, 2015 Correspondence from Brown |
| O | Docket Report of Foreclosure Action |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

Defendant Rushmore Loan Management Services LLC ("Rushmore"), by counsel and pursuant to Rule 56 of the Federal Rules of Civil Procedure, submits the following memorandum in support of its Motion for Summary Judgment on the sole remaining claim alleged by Plaintiff Cornell Brown as Personal Representative for the Estate of Virginia Brown ("Plaintiff"). For the following reasons, Rushmore's Motion for Summary Judgment should be granted.

## I.     INTRODUCTION

This Court dismissed all of Plaintiff's claims except a single claim for violation of the Real Estate Settlement Procedures Act ("RESPA")[1] for purported "dual tracking" on the mortgage loan of deceased Virginia Brown ("Brown") and her non-party brother, Leroy Culp, Sr. ("Culp"). *See* ECF No. 53 p. 37 ("The only claim that may proceed is [Virginia] Brown's claim against Rushmore for allegedly dual tracking her loan in violation of RESPA."). Plaintiff brings this claim under 12 C.F.R. § 1024.41(g), only. *See* Amended Class Action Complaint ("Complaint"), ECF No. 25 ¶ 278; *see also* Memorandum Opinion, ECF No. 53 p. 14 ("These allegations are sufficient to state a plausible claim under § 1024.41(g).").[2]

At the heart of this remaining claim under § 1024.41(g) is the simple question: Did Rushmore ever obtain a foreclosure judgment, order of sale, or conduct a foreclosure sale? The

---

[1] "RESPA's implementing regulations are codified at 12 C.F.R. §§ 1024.1–1024.41 and known as 'Regulation X.'" *Brown v. Select Portfolio Servicing, Inc.*, No. GJH-18-1664, 2019 WL 1958547, at *3 (D. Md. May 2, 2019).

[2] The Court clarified that: "Plaintiff[] also note[s] § 1024.41(f), which bars servicers from proceeding with a foreclosure if the borrower submits a completed loss mitigation application before the servicer makes the first notice or filing for a foreclosure . . . [, but] because Plaintiffs only mention this provision and do not appear to claim that Rushmore violated it, <u>the Court does not consider it further</u>." ECF No. 53 p. 28 n 13 (emphasis added). Additionally, and importantly, Plaintiff declined to amend the Complaint by the deadline of June 22, 2020. Scheduling Order, ECF No. 57.

answer is an undisputed "No." *See* Declaration of Kerry Walthall ("Walthall Decl.") ¶ 24, Exhibit O (Docket Report), attached hereto as **Exhibit 1** (As evidenced by the foreclosure action docket report, Rushmore never moved forward with the foreclosure action.). Further, this dual tracking claim under § 1024.41(g) is rendered implausible by Plaintiff's own factual allegations as it is undisputed that Rushmore did not commit the proscribed actions in § 1024.41(g) of obtaining a foreclosure judgment, order of sale, or conducting a foreclosure sale. *See Brown*, 2019 WL 1958547 at *5 (D. Md. May 2, 2019) (dismissing plaintiff's § 1024.41(g) claim because "[i]n any case, the Complaint does not allege that a foreclosure sale has occurred.") (emphasis added).

Accordingly, Rushmore is entitled to summary judgment as a matter of law because it never "mov[ed] for foreclosure judgment or order of sale, or conduct[ed] a foreclosure sale." 12 C.F.R. § 1024.41(g).

## II. STATEMENT OF UNDISPUTED MATERIAL FACTS

### A. The Loan

Brown and her non-party brother, Leroy Culp, Sr. ("Culp"), (collectively, "Borrowers") purchased a parcel of real property in Pikesville, Maryland on June 26, 2001. Walthall Decl. ¶ 5, Exhibit A (Deed of Trust). To finance the purchase, Borrowers obtained an FHA-insured loan (the "Loan"). *Id.* at ¶ 6, Exhibit B (Note). On December 1, 2014, Rushmore acquired the servicing rights to the Loan, which was in default at the time of transfer. *Id.* at ¶ 7, Exhibit C (Notice of Servicing Transfer).

### B. June 2015 Loss Mitigation Application

Rushmore received a Request for Mortgage Assistance ("RMA") from Brown, dated June 4, 2015. *Id.* at ¶ 8, Exhibit D (June 2015 RMA).

#### i. The Initial Missing Documents

On June 12, 2015, Rushmore sent Brown a letter requesting missing documents by June 27, 2015. *Id.* at ¶ 9, Exhibit E (June 12, 2015 Correspondence). Specifically, the June 12, 2015 Correspondence requested the following documents: (1) signed federal tax return for the most recent calendar year, including all schedules and W2s, 1099s, K-1s, 1120s, and/or 1065s; (2) proof of funds for the down payment; (3) recent two month paystubs from Cornell Brown; (4) proof of two month SSA deposits from Brown; (5) recent SSA award letter with two month proof of deposits from Culp; (6) recent two month complete pages of bank statements; and (7) proof of pension deposits for April 15 from Brown. *Id.*

### ii. The Remaining Missing Documents

On June 26, 2015, Rushmore received a fax from Brown containing all of the missing documents *except* (1) Culp's 2015 SSA Letter (the proof of deposits in 2015 did not match the letter submitted); (2) Culp's 2014 signed tax return (the documents included letters explaining why Brown and Cornell Brown did not file taxes); and (3) proof of funds for the down payment. *Id.* at ¶ 10, Exhibit F (June 26, 2015 Correspondence).

Rushmore called Borrowers on June 30, 2015 and July 1, 2015 in regard to these missing documents, but did not speak with either Borrower. *Id.* at ¶ 11, Exhibit G (Contemporaneous Notes).

As Rushmore never received these remaining missing documents by the requested date of by June 27, 2015, or thereafter, Rushmore prepared a letter on July 2, 2015 indicating that it was closing the review file. *Id.* at ¶ 12, Exhibit H (July 2, 2015 Correspondence).

In correspondence to Brown on August 26, 2015, Rushmore explained that it received supplemental documents from her on June 26, 2015, but the documents did not include (1) Culp's 2015 SSA Letter; (2) Culp's 2014 tax return; or (3) proof of funds for the down payment. *Id.* at ¶ 13, Exhibit I (August 26, 2015 Correspondence).

Therefore, the review file for the June 2015 RMA application was closed because Borrowers never submitted (1) Culp's 2015 SSA Letter; (2) Culp's 2014 tax return; or (3) proof of funds for the down payment. *Id.* at ¶ 14, Exs. F, H.

C. **August 2015 Loss Mitigation Application**

On August 19, 2015, Rushmore sent loss mitigation information to Brown, inviting her to submit a new application. *Id.* at ¶ 15, Exhibit J (August 19, 2015 Correspondence). Brown failed to respond entirely to this application, and on September 14, 2015, Rushmore informed Brown that it was closing the review file. *Id.* at ¶ 16, Exhibit K (September 14, 2015 Correspondence).

D. **October 2015 Loss Mitigation Application**

On October 23, 2015, Brown submitted a new Request for Mortgage Assistance to Rushmore. *Id.* at ¶ 17, Exhibit L (October 2015 RMA).

i. **The Missing Documents**

After review of the submitted documents, on October 27, 2015, Rushmore requested missing documents. *Id.* at ¶ 18, Exhibit M (October 27, 2015 Correspondence). The missing documents were identified as (1) proof of funds for the down payment; (2) proof of deposits for SSA for Culp; and (3) lease documentation. *Id.*

E. **The Foreclosure Action**

On November 6, 2015, prior to receiving the outstanding documents from Brown, Rushmore's substitute trustee commenced a foreclosure action in the Circuit Court for the County of Baltimore, Case No. C-15-12242. *Id.* at ¶ 20, Exhibit O (Docket Report).

After initiation of the foreclosure action, Brown submitted a complete application on November 9, 2015, which included all required documents. *Id.* at ¶ 19. Upon Brown's submission of the outstanding documents, the foreclosure action was halted for the loss mitigation process to proceed. *Id.* at ¶¶ 21, 24, Ex. O.

However, on November 17, 2015, eight days after the foreclosure action yielded to the loss mitigation process, Brown filed a counterclaim in the foreclosure action which brought the loss mitigation process to an abrupt halt as well, as Rushmore placed a required litigation hold on the file. *Id.* at ¶ 22, Ex. O. Brown litigated her counterclaim for *over two years*, only for her to voluntarily dismiss it on February 26, 2018, and then start all over the following week on March 5, 2018 in this Court. *Id.* at ¶ 23, Ex. O.

Rushmore has not moved forward with the foreclosure action since November 9, 2015. *Id.* at ¶ 24, Ex. O.

### III. PROCEDURAL HISTORY

In April 2018, Rushmore asked the Court to stay this case pending the Maryland Court of Appeals' forthcoming ruling in a case raising related issues, *Blackstone v. Sharma*, No. 040, September Term 2017. ECF No. 7, ECF No. 14-1. ECF No. 10. The Court of Appeals issued a decision in *Blackstone* on August 2, 2018, *Blackstone v. Sharma*, 191 A.3d 1188 (Md. 2018), and Brown filed an Amended Complaint on October 9, 2018, ECF No. 25.

On May 10, 2019, Rushmore filed a Motion to Dismiss, ECF No. 38. While the Motion to Dismiss was pending, Rushmore filed a Notice of Supplemental Authority that alerted the Court that Judge Bennett of this Court issued a ruling in a case that raises some of the issues presented in this case. ECF No. 51 (citing *Suazo v. U.S. Bank Trust, NA*, No. RDB-18-1451, 2019 WL 4673450 (D. Md. Sept. 25, 2019). On March 20, 2020, the Court dismissed all of Plaintiff's claims except the RESPA § 1024.41(g) claim for purported "dual tracking" on the mortgage loan of Borrowers. ECF No. 53.

### IV. LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the

moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248–49.

## V. ARGUMENT

Regulation X prohibits a practice known as "dual tracking." "Dual tracking occurs where a servicer *moves forward* with foreclosure while simultaneously working with the borrower to avoid foreclosure." *Farber v. Brock & Scott, LLC*, No. CV WGC-16-117, 2017 WL 4347826, at *16 (D. Md. Sept. 29, 2017) (emphasis added); *Agomuoh v. PNC Fin. Servs. Grp.*, No. GJH-16-1939, 2017 WL 657428, at *9 (D. Md. Feb. 16, 2017) ("*continuing* with the foreclosure of their home while their loan modification application was still pending) (emphasis added). Dual tracking cannot occur until a loss mitigation application is complete. *See Weisheit v. Rosenberg & Assocs., LLC*, No. CV JKB-17-0823, 2017 WL 5478355, at *4 (D. Md. Nov. 15, 2017) ("<u>The loss mitigation process begins when a borrower submits a complete loss mitigation application</u> and ends when the servicer denies that application on appeal (or after the servicer's first denial, if the borrower fails to appeal.") (emphasis added).

Plaintiff alleges that Rushmore engaged in "dual tracking" because under 12 C.F.R. § 1024.41(g), Rushmore was "prohibited from *initiating* foreclosure activities until it had completed

6

its review of the application and if that application was denied, until . . . loss mitigation appeal rights [were exhausted]." Compl., ECF No. 25 at ¶ 278 (emphasis added).

This claim fails as a matter of law and fact because (1) Rushmore never moved for foreclosure judgment or order of sale, or conducted a foreclosure sale, **which is a prerequisite for liability under § 1024.41(g)**; and (2) nothing in § 1024.41(g) prohibits a mortgage servicer from *initiating* foreclosure activities:

> If a borrower submits a complete loss mitigation application after a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process but more than 37 days before a foreclosure sale, **a servicer shall not move for foreclosure judgment or order of sale, or conduct a foreclosure sale**, unless:
>
> (1) The servicer has sent the borrower a notice pursuant to paragraph (c)(1)(ii) of this section that the borrower is not eligible for any loss mitigation option and the appeal process in paragraph (h) of this section is not applicable, the borrower has not requested an appeal within the applicable time period for requesting an appeal, or the borrower's appeal has been denied;
> (2) The borrower rejects all loss mitigation options offered by the servicer; or
> (3) The borrower fails to perform under an agreement on a loss mitigation option.

12 C.F.R. § 1024.41(g) (emphasis added).

A. **Rushmore Complied with RESPA by Never Obtaining a Foreclosure Judgment, Order of Sale, or Conducting a Foreclosure Sale.**

12 C.F.R. § 1024.41(g) proscribes "mov[ing] for foreclosure judgment or order of sale, or conduct[ing] a foreclosure sale." 12 C.F.R. § 1024.41(g). Therefore, to be liable under § 1024.41(g), Rushmore must have committed one of these proscribed acts. Here, no genuine dispute exists that Rushmore complied with § 1024.41(g) because Rushmore *never* moved for foreclosure judgment or order of sale, or conducted a foreclosure sale. *See Brown*, 2019 WL 1958547 at *5 (D. Md. May 2, 2019) (dismissing plaintiff's § 1024.41(g) claim because "[i]n any case, the

Complaint does not allege that a foreclosure sale has occurred.") (emphasis added); *see also* Walthall Decl. ¶ 24, Ex. O.

Instead, Rushmore halted the foreclosure process entirely upon receipt of Brown's completed loss mitigation application on November 9, 2015.[3] *Id.* at ¶¶ 21, 24. Thus, Rushmore went above and beyond the requirements of § 1024.41(g) which does not "prevent[] a servicer from proceeding with the foreclosure process, including any publication arbitration, or mediation requirements established by applicable law[,] . . . so long as any such steps in the foreclosure process do not cause or directly result in the issuance of a foreclosure judgment or order of sale, or the conduct of a foreclosure sale." *Green-Wright v. JPMorgan Chase Bank, N.A.*, No. CV ELH-17-3199, 2018 WL 3756714, at *11 (D. Md. Aug. 7, 2018) (emphasis added).

Accordingly, the undisputed facts demonstrate that Rushmore complied with its RESPA obligations and is entitled to summary judgment.

**B.**  **12 C.F.R. § 1024.41(g) Does Not Prohibit a Mortgage Servicer from Initiating Foreclosure Proceedings.**

Plaintiff's "dual tracking" claims fails for the additional reason that § 1024.41(g) does not prohibit initiation of foreclosure activities, as Plaintiff alleges.[4] Instead, § 1024.41(g) governs situations in which the loss mitigation process begins *after* the mortgage servicer initiates foreclosure proceedings. *See* 12 C.F.R. § 1024.41(g) ("If a borrower submits a complete loss mitigation application after a servicer has made the first notice or filing required by applicable law

---

[3] Brown completed a loss mitigation application on November 9, 2015, three days after Rushmore commenced the foreclosure action. However, regardless of when Brown completed a loss mitigation, Plaintiff's claim must fail because Plaintiff cannot satisfy the prerequisite for liability under § 1024.41(g) that Rushmore obtained a foreclosure judgment or order of sale, or the conduct of a foreclosure sale.

[4] *See* Compl., ECF No. 25 at ¶ 278 (Plaintiff (incorrectly) claims § 1024.41(g) "prohibited [Rushmore] from *initiating* foreclosure activities until it had completed its review of the application and if that application was denied, until . . . loss mitigation appeal rights [were exhausted].).

. . . ."); *Weisheit*, 2017 WL 5478355 at *4 ("The loss mitigation process begins when a borrower submits a complete loss mitigation application and ends when the servicer denies that application on appeal (or after the servicer's first denial, if the borrower fails to appeal.") (emphasis added).

Here, the loss mitigation process did not begin until November 9, 2015, three days after the first filing in the foreclosure action on November 6, 2015. Walthall Decl. ¶¶ 20-21. And, most importantly, as soon as the loss mitigation process began on November 9, 2015, Rushmore brought all foreclosure proceedings to a halt, yielding to the loss mitigation process. *Id.* at ¶¶ 23, 26. This chronology is entirely lawful under § 1024.41(g).

The loss mitigation process began three days after Rushmore commenced the foreclosure action because Brown failed to *ever* complete her June 2015 loss mitigation application, but completed her October 2015 loss mitigation application. Specifically, Brown's only submissions for the June 2015 loss mitigation application occurred on June 9, 2015 and June 26, 2015, and did not include (1) Culp's 2015 SSA Letter (the proof of deposits in 2015 did not match the letter submitted); (2) Culp's 2014 signed tax return (the documents included letters explaining why Brown and Cornell Brown did not file taxes); or (3) proof of funds for the down payment. Walthall Decl. ¶¶ 10-14. As a result, the review file for the June 2015 RMA application was eventually closed. *Id.* at ¶ 12. However, Brown completed her October 2015 loss mitigation application on November 9, 2015 – after Rushmore had initiated its foreclosure action. *Id.* at ¶ 19. Upon receipt of these documents, Rushmore immediately placed a halt on foreclosure to review Plaintiff's application. *Id.* at ¶ 21. To date, Rushmore has not moved forward with the foreclosure action to obtain a foreclosure judgment or order of sale, or to conduct a foreclosure sale. *Id.* at ¶ 24, Ex. O.

As a result, Rushmore is entitled to summary judgment as a matter of law for the additional reason that § 1024.41(g) does not proscribe initiation of foreclosure proceedings; instead, it proscribes <u>obtaining a foreclosure judgment or order of sale, or conducting a foreclosure sale</u>.[5]

## VI. CONCLUSION

For the foregoing reasons, Rushmore respectfully requests that the Court grant its Motion for Summary Judgment against Plaintiff and any other relief the Court deems appropriate.


Dated: August 11, 2020

Respectfully submitted,

**RUSHMORE LOAN MANAGEMENT SERVICES LLC**


*/s/ John C. Lynch*
John C. Lynch, Esq. (MD Bar No. 12963)
TROUTMAN PEPPER HAMILTON SANDERS LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, VA 23462
Telephone: (757) 687-7765
Facsimile: (757) 687-1504
E-mail: john.lynch@troutman.com

---

[5] Furthermore, Rushmore would be entitled to summary judgment even if Plaintiff had filed suit under RESPA § 1024.41(f), which prohibits servicers from initiating foreclosure during the pendency of a *complete* loss mitigation application. As shown by the undisputed facts, Plaintiff did not submit a complete loss mitigation application prior to Rushmore initiating the foreclosure action. Walthall Decl. at ¶ 19. Thus, any attempt by Plaintiff now to amend the Complaint to assert a violation of RESPA § 1024.41(f) would be after the Court's deadline to amend and, even more importantly, futile.